IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORFAB CORPORATION          :        CIVIL ACTION
                            :
        v.                  :
                            :
THE TRAVELERS INDEMNITY CO. :        NO. 07-4482


MEMORANDUM

Bartle, C.J.                                    May 5, 2008

          NorFab Corporation ("NorFab") instituted this action
against its insurer, defendant The Travelers Indemnity Company
("Travelers") for failure to defend and indemnify it in
connection with a lawsuit brought against it by PBI Performance
Products, Inc. ("PBI") for patent infringement as well as
trademark and trade dress infringement and dilution.  PBI
Performance Prods., Inc. v. NorFab Corp., Civ. A. No. 05-4836
(E.D. Pa.).  In the present action, NorFab seeks a declaratory
judgment and damages against Travelers in the form of attorney's
fees and costs.[1]

          Now pending before the court are:  (1) the motion of
Travelers for summary judgment on the ground that it had no duty
to defend under its insurance policies; (2) the motion of NorFab
for partial summary judgment with respect to its claim in Count I
of its Complaint for a declaration that Travelers had a duty to

_____

1.  NorFab's complaint also contained a claim in the alternative
for reformation of the insurance contracts.  This claim has been
dismissed by stipulation of the parties.

defend it in the underlying action and its claim in Count II for breach of contract for Travelers' failure to reimburse it for its attorney's fees and costs in that action; (3) the motion of Travelers to amend its response in opposition to NorFab's motion for partial summary judgment; and (4) the motion of Travelers for leave to file a sur-reply.

The parties, except for a specific matter to be discussed later, agree that there are no genuine issues of material fact with respect to the pending motions for summary judgment and that judgment can be entered as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

In the underlying lawsuit, which was filed in this court on September 9, 2005, PBI alleged that its patent, trademark and trade dress rights in PBI MATRIX®, a flame and thermal resistant fabric made for firefighter's turnout gear, were infringed by NorFab's manufacture, advertisement, and sale of its own flame and thermal resistant fabric. See 35 U.S.C. § 271, et seq.; 15 U.S.C. §§ 1125(a) and (c). Among other allegations, the underlying complaint accused NorFab of infringing two separate trademarks. The first was trademark number 2,739,268 (the "'268 trademark"), which PBI referred to as a "design mark" consisting of a "gold background with contrasting checkered pattern," and the second was trademark number 2,977,768 (the "'768 trademark"), which PBI simply characterized as the PBI MATRIX® mark. The underlying complaint stated in relevant part:

           33.   Upon information and belief, NorFab
is distributing, selling, offering for sale,
promoting and advertising its flame and
thermal resistant textile fabrics bearing
exact imitations of PBI's said distinctive
design mark, the gold background with a
contrasting checkered pattern, PBI MATRIX®
mark, and/or the distinctive gold background
with a contrasting checkered pattern Trade
Dress ....

PBI v. NorFab Compl. at ¶ 33.

      On June 11, 2007, this court granted summary judgment
in favor of NorFab as to PBI's allegations of trademark and trade
dress infringement and dilution.  PBI moved for reconsideration
of the court's order.  We granted the motion and vacated the
order on August 2, 2007.  However, in the same August 2, 2007
order, we again granted summary judgment in favor of NorFab on
PBI's allegations of trademark and trade dress infringement and
dilution.  Thereafter, on August 29, 2007, we granted NorFab's
motion for summary judgment as to the patent infringement claims
in the underlying suit, and we denied PBI's cross-motion for
partial summary judgment as to the validity of its patent.
Though PBI has appealed to the Federal Circuit this court's grant
of summary judgment against it as to its patent infringement
claims, PBI did not appeal the August 2, 2007 order disposing of
its trademark and trade dress infringement and dilution claims.

      NorFab had purchased three insurance policies from
defendant Travelers which NorFab maintains provide coverage for
certain claims in the underlying lawsuit.  They are:  (1) Policy
No. Y-630-278D9703-TCT-03 for the period April 26, 2003 to

April 26, 2004 (the "2003-2004 policy"); (2) Policy No. Y-630-
278D9703-TCT-04 for the period April 26, 2004 to April 26, 2005
(the "2004-2005 policy"); and (3) Policy No. Y-630-278D9703-TCT-
05 for the period April 26, 2005 to April 26, 2006 (the "2005-
2006 policy").  Each of these three policies provides
comprehensive general liability ("CGL") coverage, including
coverage for "personal and advertising injury liability."

        The CGL coverage in each of the three policies was
supplemented by a "Web Xtend Liability" endorsement, which states
in part:

> [Travelers] will pay those sums that the
> insured becomes legally obligated to pay as
> damages because of 'personal injury',
> 'advertising injury' or 'website injury' to
> which this insurance applies.  [Travelers]
> will have the right and duty to defend any
> 'suit' seeking those damages.

Under the endorsement, "[t]his insurance applies to:  ... (2)
'Advertising injury' caused by an offense committed in the course
of advertising your goods, products or services ...."  The Web
Xtend Liability endorsement defines advertising injury, in
relevant part, as "injury, arising out of ... infringement of
copyright, title or slogan."[2]  It is the coverage for

_____

2.  In the 2004-2005 and 2005-2006 policies, advertising injury
is defined as "injury, arising out of ... infringement of
copyright, title or slogan, provided that the claim is made or
'suit' is brought by a person or organization claiming ownership
of such copyright, title or slogan."  Because it is undisputed
that the plaintiff in PBI v. NorFab claimed such ownership, the
addition of this language in the later policies has no effect on
our analysis.

"infringement of ... title" on which NorFab relies to support its claim that Travelers had a duty to defend it.

On February 28, 2006, Travelers denied coverage for the PBI v. NorFab suit.  It wrote to NorFab, in relevant part, that the underlying complaint "does not allege an enumerated 'advertising injury' offense or a 'web site injury' offense, as defined in Travelers' so-called 'Web Xtend Liability' endorsement."  Pl.'s Compl. at ¶ 17b.

The parties agree that one of the three Travelers insurance policies was in force at all times throughout the relevant time period.  Because there are no material differences among the policies, the court need not determine under which policy Travelers' duty to defend, if any, arose.  The parties also agree that any duty to defend would terminate at the very latest on August 2, 2007, the date that this court granted summary judgment for the second time in favor of NorFab as to the trademark and trade dress infringement and dilution claims brought against it by PBI as that is the only portion of PBI's complaint which NorFab alleges would have triggered Travelers' duty to defend.  See Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins. Co., 65 F.3d 1097, 1100 (3d Cir. 1995).

The issue before the court is a narrow one.  Travelers argues that it has no duty to defend because any conduct that NorFab allegedly "committed in the course of advertising" does not constitute "infringement of title" under any of its insurance policies.  It is undisputed that the law of Pennsylvania governs

-5-

the interpretation of the policies in issue.  Frog, Switch & Mfg.
Co. v. Travelers Ins. Co., 193 F.3d 742, 745-46 (3d Cir. 1999).
Thus, we must determine:  (1) how the Pennsylvania Supreme Court
would define *title*, as it is used in the insurance contracts at
issue; and (2) whether PBI's complaint alleges that NorFab
infringed a title within that definition.  In deciding whether
Travelers had a duty to defend NorFab against the underlying
suit, we compare the coverage afforded under the policy with the
factual allegations contained within the four corners of the
complaint.  Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 745
(Pa. 1999).  Travelers had a duty to defend if the allegations in
the "underlying complaint may 'potentially' come within the
insurance coverage." Frog, Switch, 193 F.3d at 746 (citing Erie
Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. 1996).

        Under Pennsylvania law, interpretation of an insurance
contract is a question of law.  401 Fourth St., Inc. v. Investors
Ins. Group, 879 A.2d 166, 171 (Pa. 2005) (citations omitted).
The court's "task is to ascertain the intent of the parties as
manifested by the terms used in the written insurance policy."
Id. (citation omitted).  The court must give effect to any
language of the policy which is clear and unambiguous.  Id.
(citation omitted).  If, however, a provision in an insurance
policy is ambiguous, the policy must be construed in favor of the
insured and against the insurer who drafted the language.
Id. (citation omitted).  The court should not consider individual
terms unmoored from their context but should instead consider the

-6-

entire contractual provision to determine the intent of the
parties.  Id.  The Pennsylvania courts have not addressed the
meaning of the advertising offense of "infringement of copyright,
title or slogan."  Therefore, we must consider "relevant state
precedents, analogous decisions, considered dicta, scholarly
works, and any other reliable data tending convincingly to show
how the highest court in the state would decide the issue at
hand."  Houbigant, Inc. v. Federal Ins. Co., 374 F.3d 192, 197
(3d Cir. 2004).

        In ascertaining the intent of the parties in the phrase
"infringement of title," we must first consider whether or not
the word *title* is ambiguous.  In Pennsylvania, "[c]ontractual
language is ambiguous if it is reasonably susceptible of
different constructions and capable of being understood in more
than one sense."  401 Fourth St., 879 A.2d at 171 (citations
omitted).  Although Travelers argues that *title* is not ambiguous
in the context found here, it acknowledges that *title* has several
dictionary definitions that could be applicable in the context of
an insurance policy and that case law defining it is split
between two or more views.  We conclude that the word *title* is
reasonably susceptible of different constructions under
Pennsylvania law.  See Houbigant, 374 F.3d at 199.

        Because the word is ambiguous, the parties essentially
ask this court to choose between two competing definitions.
NorFab contends that this court should adopt a definition of the
word that includes any distinctive "name, appellation [or]

-7-

epithet ...." Id. at 200; see also Charter Oak Fire Ins. Co. v. Heedeen & Cos., 280 F.3d 730, 736 (7th Cir. 2002) (Wisconsin law), Winner Int'l Corp. v. Continental Cas., 889 F. Supp. 809, 815 (W.D. Pa. 1994) (Pennsylvania law), et al. Travelers disagrees and urges this court to use a narrower definition, limiting title to "a distinctive name or designation used to identify a literary or artistic work." Nationwide Mut. Ins. Co. v. Mortensen, 222 F. Supp. 2d 173 (D. Conn. 2002) (Connecticut law); see also Palmer v. Truck Ins. Exchange, 988 P.2d 568, 573 (Cal. 1999) (California law), Sholodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256, 259 (6th Cir. 1999) (Tennessee law), et al. We, of course, must construe the language in favor of the insured. 401 Fourth St., 879 A.2d at 171.

Our Court of Appeals in Houbigant had occasion to interpret under New Jersey law the phrase "trademarked title" contained in the advertising injury provision of a CGL policy. Houbigant, 374 F.3d 192. In Houbigant, the insureds were alleged to have sold a watered-down version of Houbigant's "Chantilly" fragrance and to have used the Houbigant name to sell non-Houbigant products. Id. at 196. Under the insurance contract, the insurer had a duty to defend the insured against a suit alleging advertising injury due to infringement of "trademarked or service marked titles or slogans." Id. at 195. The court in Houbigant defined trademarked title as "any name, appellation, epithet, or word used to identify and distinguish the trademark holder's good from those manufactured or sold by others." Id. at

200.  It then determined that Houbigant's housemark, "Houbigant,"
and its product mark, "Chantilly," fell within that definition
and that the complaint against the insured included allegations
that those titles had been infringed.  <u>Id.</u>

          Travelers attempts to distinguish <u>Houbigant</u> by arguing
that it was interpreting the phrase "infringement of trademarked
title," whereas here, the operative phrase from its insurance
policy is "infringement of copyright, title or slogan."  This
distinction, in our view, is without substance.  The word *title*
is broader than and inclusive of the term "trademarked title,"
and we see no reason, nor does Travelers provide one, why a broad
definition of "trademarked title" would lead to a narrow
definition of *title*.  In addition, other courts which have
construed the phrase "infringement of copyright, title or slogan"
have come to the same conclusion as the court in <u>Houbigant</u>.  <u>E.g.</u>
<u>Charter Oak</u>, 280 F.3d at 736 (Wisconsin law); <u>Am. Emplr's Ins.</u>
<u>Co. v. DeLorme Pub. Co.</u>, 39 F. Supp. 2d 64, 77-79 (D. Me. 1999)
(Maine law).  Finally, the <u>Houbigant</u> court itself squarely
rejected the reasoning of the courts which have defined *title*
more narrowly so as to limit it to literary or artistic works.
<u>Cf.</u> <u>Palmer v. Truck Ins. Exch.</u>, 988 P.2d 568 (Cal. 1999).[3]

---

3.  Travelers also attempts to distinguish <u>Houbigant</u> by
contending that that action was based, in part, on New Jersey's
reasonable expectations doctrine, which does not apply to a
commercial insured like NorFab under Pennsylvania law.  <u>Madison</u>
<u>Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 109 n.8
(Pa. 1999).  Contrary to Travelers' argument, the <u>Houbigant</u> court
did not ground its decision on, or even make any mention of, New
                                              (continued...)

Although the Supreme Court of Pennsylvania would not be bound by Houbigant, that case is persuasive in its reasoning, particularly since the relevant law governing the interpretation of insurance contracts in Pennsylvania and New Jersey is the same. Compare Longobardi v. Chubb Ins. Co. of N.J., 582 A.2d 1257, 1260 (N.J. 2002) and Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1259 (N.J. 1992) with 401 Fourth St., 879 A.2d at 171. We conclude that Pennsylvania's highest court would come to the same result reached by the Court of Appeals in Houbigant and would hold that the word *title* as it appears in the insurance contract before us encompasses any distinctive name, appellation or epithet.

Having made that determination, the court must next consider whether the underlying complaint in PBI v. NorFab alleged that NorFab infringed PBI's rights in any distinctive name, appellation or epithet such that Travelers' duty to defend was triggered. Mutual Benefit, 725 A.2d at 745 (Pa. 1999). As noted earlier, in analyzing this question, the court must compare the coverage afforded under the policy with the factual allegations contained within the four corners of the complaint. Id. It is well settled that an insurer's duty to defend "arises whenever an underlying complaint may 'potentially' come within the insurance coverage." Further, "in determining the existence

---

3.(...continued)
Jersey's reasonable expectations doctrine.  Houbigant, 374 F.3d at 199 & n.9.

of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." <u>Frog, Switch</u>, 193 F.3d at 746 (citation omitted).

NorFab asserts that PBI's allegations with respect to the '768 trademark, the PBI MATRIX® mark, constitute infringement of title as contemplated in the insurance contract and thus requires Travelers' to defend it.  In its complaint, PBI provided the following description of the PBI MATRIX®:

> 27.  The second distinctive trademark featured on the PBI's flame and thermal resistant textile fabrics of '096 patent is PBI MATRIX®, which consists of stylized letters 'P', 'B', and 'I' with a flame design over the "I".  The stylized letters 'P', 'B', and 'I' include a gold background with a contrasting checkered pattern. ... PBI's flame and thermal resistant textile fabrics of '096 patent bearing PBI MATRIX® mark identifies PBI's flame and thermal resistant textile fabrics of '096 patent, and distinguishes said PBI's flame and thermal resistant textile fabrics of '096 patent from those of others. ... PBI MATRIX® was registered with the United States Patent and Trademark Office [and] received Registration No. 2,977,768.

Travelers counters that the PBI MATRIX® mark was granted only for a design, not for a title or name of any sort, and thus, the underlying complaint only accuses NorFab of infringing rights in a design, not a title or name.  We disagree.  Despite Travelers' contentions to the contrary, it is clear that the trademark granted in the '768 registration is for "PBI MATRIX," with the letters of "PBI" stylized as described above and the word

"MATRIX" in block capitals.  Each of the exhibits to PBI's
complaint shows the PBI MATRIX® mark in exactly this fashion.
Although the registration of the '768 trademark states that "[n]o
claim is made to the exclusive right to use 'PBI', apart from the
mark as shown," this does not mean, as Travelers urges, that the
letters "PBI" are not part of the trademark as registered.  To
the contrary, the wording of the disclaimer in the trademark
registration suggests exactly the opposite.

In addition, the underlying complaint itself makes a
distinction between the two trademarks it alleges were infringed
by NorFab.  The first trademark is identified by PBI as a
"distinctive and innovative design mark, a gold background with
contrasting checked pattern," registered as Trademark No.
2,739,268.  The second is the PBI MATRIX® mark, the '768 mark, as
described above.  The underlying complaint, we reiterate, sets
forth trademark infringement allegations against NorFab as
follows:

> 33.  Upon information and belief, NorFab
> is distributing, selling, offering for sale,
> promoting and advertising its flame and
> thermal resistant textile fabrics bearing
> exact imitations of PBI's said distinctive
> design mark, the gold background with a
> contrasting checkered pattern, PBI MATRIX®
> mark, and/or the distinctive gold background
> with a contrasting checkered pattern Trade
> Dress ....  (emphasis added).

Travelers claims that the phrase "distinctive design mark" must
be read as referring to the "PBI MATRIX® mark," the '768 mark.
We are not persuaded.

-12-

First, the underlying complaint consistently refers to the subject matter of the '268 trademark as a "distinctive design mark, the gold background with a contrasting checkered pattern." Significantly, the complaint always refers separately to the PBI MATRIX® mark and never refers to it as a "design mark." We read paragraph 33 of the Amended Complaint as referring in parallel sentence construction to the "design mark," that is the '268 mark, and separately to the "PBI MATRIX® mark," that is the '768 mark.

Moreover, the underlying complaint alleges that "PBI MATRIX®" is the name given by PBI to the thermal and flame resistant fabric that was at issue. PBI v. Norfab Compl. at ¶ 11. Such a product name falls within the meaning of the word *title* as used by the insurance policy at issue here. See Houbigant, 374 F.3d at 200. Particularly considering that the allegations in the underlying complaint are to be liberally construed in favor of the insured, we conclude that the underlying complaint is fairly read as alleging that the '768 trademark registration gave PBI rights in the name or title of its product and that PBI accused NorFab of infringing that trademark.[4] It does not matter whether a complaint's allegations

---

4. We also note that this court, in deciding the summary judgment motions in PBI v. NorFab, considered the underlying complaint to allege that NorFab had infringed PBI's nominal or titular rights in PBI MATRIX®. In granting judgment as to NorFab on this issue, we stated:

   In Count II of its complaint, PBI also
                                          (continued...)

are "groundless, false or fraudulent." Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (citation omitted).  An insurer has the duty to defend against them as long as they potentially fall within the ambit of the policy.  Id.  Accordingly, Travelers' duty to defend NorFab in the underlying action was triggered.

Travelers has belatedly raised an issue as to when any duty to defend NorFab may have expired.  The motion of NorFab for summary judgment stated that NorFab was seeking an order "[d]eclaring that The Travelers had a duty to defend NorFab in PBI Performance Products, Inc. v. NorFab Corporation, Civil Action No. 05-4836 (E.D. Pa.), through and including August 2, 2007 ...."  NorFab devoted some two pages of its supporting memorandum to its argument that "Travelers was required to defend NorFab until August 2, 2007, when the court, upon reconsideration, granted summary judgment on PBI's trademark claims."  NorFab's Mem. in Supp. at 17 (capitalization altered). Travelers made no response to this argument in its opposition to NorFab's motion, leading NorFab to conclude in its reply brief

---

4.(...continued)
        appears to allege that NorFab infringed its registered trademark in a logo consisting of the words "PBI MATRIX" and a picture of a flame exhibited in a highly stylized fashion. This logo is placed on PBI MATRIX® fabric and is the subject of a separate trademark registration, No. 2,977,768.

        PBI v. NorFab, Dkt. 89, Mem. at 4 n.1 (Aug. 2, 2007).

that "Travelers does not dispute that if there is coverage, it
continued until August 2, 2007 ...."  NorFab's Reply in Supp. at
9.  It was not until nearly three weeks after the briefing on the
cross-motions for summary judgment had concluded that Travelers
filed a motion for leave to amend its response in opposition to
NorFab's motion for partial summary judgment.  It also filed a
motion for leave to file a sur-reply.  In those motions,
Travelers contends that if the court finds that it had a duty to
defend, the expiration of that duty is part of the damages
inquiry.  As such, Travelers maintains that that date is a
genuine issue of disputed material fact and a matter on which it
wants discovery.

        We will deny Travelers' motion for leave to amend its
response.  Under Rule 6(b) of the Federal Rules of Civil
Procedure, a court may allow an untimely motion to be made "where
the failure to act was the result of excusable neglect."  As
noted above, in its summary judgment motion, NorFab clearly
sought a declaration that August 2, 2007 was the expiration date
of Travelers' duty to defend and expounded on this issue in its
brief.  Travelers had ample opportunity in its responsive brief
to raise a challenge, but it did not do so.  It provides the
court with no reason whatsoever, much less one showing "excusable
neglect," for its failure.  Nor has Travelers filed a motion for
a continuance under Rule 56(f) of the Federal Rules of Civil
Procedure in order to obtain additional discovery to justify its
opposition to NorFab's summary judgment motion.  We will also

deny Travelers' motion to file a sur-reply memorandum as that motion does not seek to respond to an argument raised for the first time in NorFab's reply brief.

As explained by the court in <u>Visiting Nurse Association</u>, "if the complaint against the insured alleges facts that support a recovery covered by the policy, the insurer must defend the case until it can confine the claim to a recovery that the policy does not cover."  65 F.3d at 1100 (citation omitted). Therefore, Travelers' duty to defend NorFab in the underlying action continued until August 2, 2007 when this court disposed of the underlying trademark issues in favor of NorFab.

In sum, we will grant the motion of NorFab for summary judgment as to Count I of its complaint and will declare that Travelers had a duty to defend NorFab in PBI's action until August 2, 2007.  Because it is undisputed that Travelers did not meet that duty, we will also grant the motion of NorFab for summary judgment as to liability under Count II of its complaint for breach of contract.  We do not reach the issue of damages here.  Travelers' cross-motion for summary judgment will be denied.

-16-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORFAB CORPORATION           :         CIVIL ACTION
                             :
         v.                  :
                             :
THE TRAVELERS INDEMNITY CO.  :         NO. 07-4482

ORDER

AND NOW, this 5th day of May, 2008, for the reasons set
forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of plaintiff NorFab Corporation for
partial summary judgment (Doc. No. 12) is GRANTED;

(2)  judgment is entered in favor of plaintiff NorFab
Corporation and against defendant The Travelers Indemnity Company
declaring that Travelers had a duty to defend NorFab in the
action captioned PBI Performance Prods., Inc. v. NorFab Corp.,
Civ. A. No. 05-4836 (E.D. Pa.) until August 2, 2007;

(3)  judgment is entered in favor of plaintiff NorFab
Corporation and against defendant The Travelers Indemnity Company
with respect to liability for breach of contract;

(4)  the motion of defendant The Travelers Indemnity
Company for summary judgment (Doc. No. 13) is DENIED;

(5)  the motion of defendant The Travelers Indemnity
Company to amend response in opposition to plaintiffs's motion
for partial summary judgment (Doc. No. 21) is DENIED; and

      (6)   the motion of Travelers for leave to file sur-reply to NorFab's reply memorandum (Doc. No. 22) is DENIED.

BY THE COURT:


/s/ Harvey Bartle III
                                             C.J.

-2-